The facts of this case, he's been waiting 15 years to adjust his status based on his labor certification. Not in the record, but he's married a U.S. citizen whose petition for him, I believe, has approved its compendium. Could you speak up a little, counsel? Yes. Maybe if you can adjust the mic, that would help, or stand closer to it. All right. Petitioner is also married to a U.S. citizen, and that petition, I believe, has been approved also. He had an interview in 2006. So the government has approved all the qualifications for him to have a lawful permanent residence, and he's been waiting 15 years for that. But as far as his reopening the case, the board's decision, one thing says it doesn't explain how he's precluded when he was in criminal process in Hawaii from contacting the court. Counsel, the question I have about this case is we're talking about a petition to reopen, which was filed, I think, approximately a year later or so. And your position is that that should be excused under some equitable estoppel or tolling. What is it that occurred after the board's decision that would justify tolling the period of time for filing the petition to reopen? He petitioned for review in this court, Your Honor. The at least as far as the asylum case, there was never an occasion to pursue that. Under Stone in 1995, I believe, the Supreme Court said you could move to reopen while the case of the petition is pending, but nothing happened except for the pendency of the petition in this court, in which we hoped that he would we'd have an order to allow him to adjust status. But, first of all, your current brief doesn't at all address, mention, do anything with the problem with regard to the current motion to reopen, which is, A, a second one, which is a problem in itself, and, two, filed way past the 90-day period. And you just don't talk about that at all. And I think that's what Judge Harrenheit's asking. What do we do with that? Let's just say we agreed with you about the earlier one, although that one was sort of adjudicated in the earlier court case, in the earlier petition for review. Even were we to disagree with that, and were able to disagree with that, which I'm not sure we could, and there's sort of a res judicata problem here. What about the second motion to reopen? What's the question? What about that? Well, Your Honor, as far as the asylum application that he tried to file that he tried to file. When did he try to file an asylum application? I'm sorry? When did he try to file an asylum application? In the December 2003 motion to reopen. He did file an asylum application supported by declaration and documents. And he showed changed country conditions and also changed personal circumstances, which, in our brief at page 23, we list the statutory, section 208, we list the statutory elements. And it's not just changed country conditions, it's also including activities outside the country of fear of persecution, which would now cause him to have a well-founded fear of persecution. The Board was wrong in saying that we had no evidence of changed country conditions. At page 125 and 126 of the administrative record, there's a Los Angeles Times article from December 2003, the month we filed it, saying that the month before, President Bush had designated Syria as a country that tortures its own citizens, and that the — it doesn't say when, but the Bush administration had put Syria on the list of state sponsors of terrorism. So those are changed conditions. And also, under Malti, for instance, it's whether the information was available at a previous hearing. He never had a previous asylum hearing. In the practice in immigration court, if you have an asylum case, maybe you could win it, but it's a difficult hearing. If there's an adjustment where the government's already approved the petition, the judge has a very easy hearing, it's very common to withdraw the asylum petition to let the judge have the leeway he needs to do the adjustment. And in this case, the original asylum application from 1992, I think, had nothing on it. It was filled out by some notario to get him a work permit, according to his information. But the question is, and if you could help us understand, give us a reason why this isn't a problem, it would be helpful, you could have, and as I understand, should have, even if this was a reason to deal with the numerosity problem, you still didn't file this motion within 90 days of the denial, the BIA's denial of your application issues about the adjustment of status. Now, I understand you had a petition for review pending, but that's that happens all the time, and it's not a reason. Is that what you're saying the reason is, because you had a petition for review pending? Gershengorn It was the government's appeal to the BIA included. Kagan I'm not talking about that. After the BIA denied, upheld the government's appeal, right? Gershengorn Yes. Kagan Okay. At that point, you could have filed a motion to reopen with regard to asylum, but you didn't do it. Gershengorn Yes, but there's no time limit when country conditions have changed or personal circumstances have changed. Kagan Well, there's no time limit with regard to the asylum, but there is a 90-day time limit on the petition to reopen. Gershengorn Well, Your Honor, if the basis for missing his hearing in the first place was being in custody in Hawaii, there's no time limit whatsoever. Kennedy Well, that doesn't mean for the rest of your life. If you're in custody, at the time you're supposed to file a petition, there's no time limit. That's right. But does that mean for the rest of your life, when you get to be you're let out of custody when you're 20, then you can file a petition when you're 60 because you were once in custody? It's got to mean that there's your time limit doesn't run while you're in custody, but it can't run forever after you get out of custody. Gershengorn Well, Your Honor, that's a fact that is not developed in the record as to what day he got out of custody. Kennedy Well, I thought he got out in August at the latest. Gershengorn But then that would be less than 180 days on the original. Kennedy I know, but we're not talking about filing the original petition. We're talking about why you didn't file a petition to reopen. After the latest board denial, he was long out of custody by then. Why don't you save your last two minutes for rebuttal? Thank you. Katherine Clark May I please the court? I'm Katherine Clark on behalf of the respondent. Counsel, let me start out with one question for you. Is it correct that the petitioner has now gotten all the approvals necessary for adjustment of status? With respect to petitioner statements concerning any marriage to a United States citizen, that nothing with regard to that is in the record. There is an approval notice for an I-140 employment based adjustment petition in the record. Kennedy Do you know whether he's married to an American citizen and that he has received all of the necessary papers for, do you know either way about whether that's true? Clark The government is not aware because petitioner has not presented that, any evidence with regard to that. Kennedy Well, it's the government that granted the status. You may not be aware, but the government must be aware. Clark The, with regard to the motion to reopen? Kennedy No, no, no. I'm just asking you whether, you say you are not aware that he has received approval for, to adjust his status because he's married to an American citizen. Clark I am not aware, but in any case, the court would be limited to record review. Kennedy I know what the court's limited to, thank you. I was asking you a question and your answer is you're not aware. Clark The answer is I'm not aware. Okay. We do have a mediation process which is used quite frequently in circumstances like this where status has been adjusted. It's not before us, but it's something before both parties. And this is a case in which it seems to have been from the beginning, a lot of problems that this petitioner had with his attorneys, where he never really received the type of hearing that I'm sure the government would like to afford in normal cases. But there have been a lot of problems ever with this case. And one of the services that the court offers to the parties is a way to get the parties in an equitable manner. And we've been fairly successful with the government and some petitioners who do have a status change. So would you talk to whoever in the government is aware of these things? May I clarify one statement? We are aware that petitioner status has not been adjusted. Having any approved petition with regard to an employment relationship or a family relationship merely clarifies that the relationship exists. It does not actually adjust petitioner status. You would need to reopen proceedings in this case to have the status adjusted. So if I gave the court any impression that petitioner's status has been adjusted- No, you didn't. You told me you weren't aware of whether it had been adjusted. Or if I gave the court any impression that I was unaware as to whether his status had been adjusted, that is- Well, in any event, would you please discuss with the Justice Department whether you're willing to participate in our mediation process with this case and advise us whether the government is willing to participate? I can represent now that the government would not be amenable to- On what basis are you representing that? We are defending this- I know you're defending it. So is every attorney from the government who has been here. And when they are here, we then ask them whether they will participate. They then go back to Washington or confer with the authorities who make these decisions and then advise us whether the government is willing to participate. If the court would like me to provide a- Send us a letter that says either the government is willing to participate or not within the next 10 days. To go back, and I agree with Judge Reinhardt that we do do this routinely and that usually people have some idea whether or about that. You don't seem to. So please go and ask other people. Meanwhile, the to go back to what seems to me to be the question today, it is whether there is what the status of the current motion to reopen is. Now, as I understand what the board did, the BIA, it regarded the issue of whether it should have been equitably told. The problem in the last motion should have been equitably told as before them. They say the responding claims of the period should be, the time period for the filing should be equitably told due to the ineffective assistance of attorneys who represented them, and then went on to discuss that question in terms of the earlier set of attorneys, not the current timeliness problem. Now, why shouldn't we take the BIA in its word for that? In other words, that seems perhaps a strange way to look at it, but it's how the BIA looked at it. So then why don't we simply review what they, in fact, decide? And that's what they decided, which is whether or not there was ineffective assistance with regard to the earlier time period, i.e., the 180, 184 days. The Court has already concluded that the 180, the Petitioner was beyond the 180-day deadline. But it didn't decide, specifically didn't decide until then that they had exhausted the question of whether there should be equitable tolling for that time period because of ineffective assistance, right? That is correct, even if, with regard to the ineffective assistance before the alleged ineffective assistance before the immigration judge. What's the ineffective assistance allegation directed to the 1996 motion? The 1996 motion before the immigration judge, yes. But not the 2003 motion. That is correct. And the any ineffective assistance with regard to the 1996 motion to reopen before the immigration judge still could not have excused and was not alleged to excuse Petitioner's failure to appear at his initial intervention. What I'm saying is that that sounds sensible, but it isn't the way the BIA decided this case. The BIA, as to this motion, viewed the equitable tolling issue before it and then went to consider the issues having to do with the IAC and tolling in the 19 --" with regard to the 1996 motion. That's what they looked at. And that's all they looked at. So why don't we review what they actually did? The Board erred in looking at the --" in looking at the ineffective assistance argument with respect to the current motion. In any case, the attorneys against whom Petitioner alleged ineffective assistance were not involved in the motion to reopen before the Board. However, I'm just saying the Board erred and the Board erred. Then we should either say the Board erred and we should say the Board may, in fact, have erred. But the Board never decided, is what I'm trying to say, that the --" there was or wasn't ineffective assistance with regard to the time period that we all of us now think was the relevant time period. They simply --" they addressed they thought that issue was before them, but then they didn't really answer that question. The error in this case is harmless because the ultimate outcome would be the same under Gou v. Gonzales. And under Gou v. Gonzales, a harmless error is not a reasonable amount. But you can't have a harmless error in an administrative case, as I understand it. If they --" we have to review what they did. What they did was not decide that they did not, in fact, decide that whether there was or wasn't equitable tolling with regard to the current motion. They never really decided that. They did decide that their --" that ineffective assistance did not explain the late filing of the current motion to reopen, the 2003 motion before the Board. And that in any case, they --" Where did they decide that? That is on the second page of the Board's decision, which I believe is page 3 of But all they were talking about there was the 1996 proceedings. They weren't talking about the 2003 proceedings. And in addition to --" they also decided that the Petitioner failed to show prejudice with regard to any motion to reopen in this case. And that failure to show prejudice relates back to his failure to show up to the Court. In fact, the --" as I understand it, he had a --" completed papers for adjustment of status on the basis of employment, and the original I.J. order would have granted him that adjustment of status. There was obvious prejudice. The failure to show prejudice arises because Petitioner failed to show that his initial deportation order could have been rescinded. In order to adjust his status, his initial deportation order would have had to be rescinded, and therefore, any eligibility for adjustments --" And why couldn't it have been rescinded if it was the result of ineffective assistance? It was not the result of ineffective assistance. And Petitioner does not allege that the initial --" that the initial inabsent of deportation order. Well, it obviously was. Somebody filed an order 184 instead of 180 days after they should have. That does not excuse the initial failure to appear. And that was what --" that failure to appear was what resulted in the inabsent of deportation order. Petitioner does not allege that ineffective assistance --" Except that the INS had already essentially agreed to the reopening at that point. The Immigration and Naturalization Service did not, in fact, agree to the reopening. Well, it didn't oppose it. It did not file an opposition. However, it does not concede --" it did not concede that the Court had jurisdiction. It did not --" That's --" that may go to the 180, 184 days. It couldn't possibly go to the merits of the question of whether to reopen. I mean, otherwise, you have a completely ridiculous proceeding where the --" there was a motion. There's a motion to reopen. There's no opposition. The judge grants reopening. He granted it, right, meaning he found exceptional circumstances for whatever reason. And the Board never took the position there wasn't exceptional circumstances. They just took the position that he, quote, lacked jurisdiction because of the 180, 184 days. The Board also did find a lack of exceptional circumstances because the exceptional circumstances were required to excuse Petitioner's initial failure to appear. There were --" they went back initial --" as well to the initial failure to appear. Petitioner needed to do two things in this case. He needed to show why the deportation order should, in the first instance, be rescinded. And he needed to show why proceedings should be reopened, despite his untimely filing. And Petitioner never alleged anything other than custody with regard to his initial failure to appear for his deportation proceedings. He never alleged that that was a result of ineffective assistance of counsel. And he would have had to make an argument that what the Board would accept with regard to why he never appeared at his initial deportation hearing, the hearing where he was ordered deported. I don't find anything in this decision that says there is no prejudice as a result of the denial of the late filing of the motion to reconsider this. The only time I file prejudice is the late filing of the original motion. The third paragraph of the second page of the Board's decision is where the Board addresses prejudice. It says, as a result, Respondent has not shown to have experienced actual prejudice by the late filing of the original motion. And in this case, that prejudice finding, indeed, goes back as well to the current motion to reopen, the motion to reopen before the Board, because Petitioner, with respect to both motions, would have needed to show that in some way his initial deportation order could have been rescinded. And to do that, he would have needed to show exceptional circumstances, right as the Board is addressing here. You know, I don't find a word about the issue of the – with the Board saying, this motion was filed late in 2003. We see no justification for a filing of a late motion. Therefore, it's denied. The only discussion I see in this decision, which is what's made this so puzzling to me, at least, is it's all a discussion of all the errors that occurred on either side before your latest decision, before the Board's decision in 2002. And no discussion of whether – obviously, he could have filed a motion to reconsider this decision 90 days after 2002. There's no question he could have just filed it. He might have lost. But there's no discussion of whether he had a reason to file late in 2003. Petitioner's argument for why – and he concedes even today that his argument for why he should have filed – that he – for why he filed late, the 2003 motion to reopen, is the changed circumstances in Syria argument with respect to his eligibility for asylum. And the Board does address that on the second and third. Yes, that one is addressed. Today, and I don't know what he said before, he said it was – it was excused because he had a pending petition in the court. And that is not an allegation that he presented previously. And additionally, it would not excuse any late filing. But we don't have any decision by the Board about that. That's the odd part. That's the strange part of this. But Petitioner did not present that argument before the Board, and he cannot present it for the first time. Well, the Board thought, for whatever reason, that the question of equitable tolling of the time for filing the current motion was before it. It said that. And it then went on and decided something else. It decided the question of prejudice, which does go back to the initial denial, which goes back to the current motion to reopen. That's possible. Now, the odd part about that, and maybe this has to do with the way the original case was litigated, is that that question could and should, I presume, have been appealed, or the underlying basis there should have been in the petition for review in the first go-around, right? Because you say that the BIA originally denied the reopening on two grounds. One was timeliness, and the second was that it wasn't meritorious anyway. And that seems to be accurate from what I can tell quickly. But that's the opinion from this Court in October 2003 doesn't reflect that question at all. It just reflects the date issue. That is correct. However, the Board's decision with regard to the second motion to reopen, also, the Board, in order to grant any second motion to reopen, the Board would have been required to make a finding of prejudice, and the Board did not the Board found that there was no prejudice. And in order to show prejudice, Petitioner would have needed still, even in the context of the second motion to reopen, he would have needed to explain his initial failure to appear. And the only way he did that was with the unsupported custody allegation. I think we've gone way over, so thank you, Counsel. And you'll let us know within 10 days about whether the government is willing to participate in the mediation program. Thank you. With regard to the issue of the late filing in 2003, what do you rely on? We relied on a new asylum application based on changed conditions. And we also argued that the prior ineffective assistance told the time for filing. So those are your two arguments? Yes. And those are the arguments you advanced before the BIA? Yes. And the only arguments you advanced before the BIA? I believe so, yes. And the constructive custody question seems to have been resolved by a prior determination, was it not? Yes, I think so. However, on the terms that the Board addressed the questions, I believe the Board was in error in practically every point. As far as his failure to contact the Board. Did the Board address those questions that you presented, those two reasons that you just described? The Board seems to have taken the argument more or less on our terms, as far as the 1996 motion to reopen. And then its explanation is not rational. It says there's no prejudice. Well, he was eligible to adjust. I say, well, he couldn't have got the case reopened. He got it reopened. It was, you know, maybe a jurisdictional mistake by the immigration judge, but it was something that could have been reopened and was reopened. Except that the Board did, or did it not, at least summarily in that 1997 decision or whatever that was, the one that would say that even if it had been timely, there weren't exceptional circumstances. So this is the most procedurally complicated case I've seen. But on page 183 of the record, in actually the 2002 decision, they say, further, even if the immigration judge had jurisdiction, it is clear from the record that exceptional circumstances was not demonstrated. That was in 2002. Did you ever take a petition for review from that decision? That's the one we came here on initially. Yes, but there's nothing in the opinion in our court that suggests that that issue was raised. And I'm not prepared to guide you on that, Your Honor. I see. Well, I guess you raised the constructive custody question, which would have been, I suppose, a response to that. And then they said that you had raised that before the Board. So essentially, they said that's by the Board. So why isn't that whole question just resolved as a matter of race to the cot, and that's it? We have nothing we can do about it because the constructive custody issue wasn't raised originally, and wasn't timely raised now. Well, it was raised as an argument in the motion to reopen, and ---- Seventeen months late. Yes. Well, the pendency of proceedings on ---- Do you have any authority for the position of the pendency of proceedings as it were? No, I don't, Your Honor. As just as an aside, the government's additional authority submitted in June, it extensively discussed at Stone. The rest of it, I think, is irrelevant to the issues in this case because we're not arguing that in the process argument at all. But as far as the Board addressed the original motion to reopen, said he doesn't explain why, how he's precluded from contacting the Court. That's not a requirement. And, in fact, the Board has precedent saying it doesn't matter if you contact the Court, they'll order you deported in absentia. That's Patel, 19 I&N Decisions 260 and other cases. Well, I think your point is not that you couldn't contact the ---- could have contacted them afterwards. You could have contacted them before. No. Patel stands for the fact that if you move for continuance and then you don't show up for your hearing, you'll be ordered deported. Well, if you don't get the continuance, but you might get the continuance. All right. I think we're also well over time with you, counsel, so thank you. Case just argued will be submitted. Next case on the calendar is United States v. Thomas, I think.
judges: Reinhardt, Miner , Berzon